# Compensation of Standing Trustees Under the Bankruptcy Reform Act

The compensation scheme made applicable to court-appointed chapter 13 standing trustees by the Bankruptcy Reform Act of 1978 is designed to encourage maximum economic efficiency in administering plans, and it would be contrary to congressional intent to permit a subsequent year's surplus to be applied to a prior year's deficit so as to increase the trustee's compensation for that prior year. However, a subsequent surplus may be applied to offset out-of-pocket losses suffered by the trustee in a prior year so as to permit the trustee to break even for that year.

February 26, 1982

## MEMORANDUM OPINION FOR THE DIRECTOR, EXECUTIVE OFFICE FOR UNITED STATES TRUSTEES

Your predecessor requested the opinion of this Office on two questions relating to the accounts of those chapter 13 standing trustees who are under the administration of the United States Trustees. These are: (1) whether such standing trustees may, in a particular year, establish or add to a reserve fund to cover anticipated expenses of subsequent years; and, (2) whether such standing trustees may carry operating deficits from one year forward to the next, to be repaid from subsequent surpluses. The answers to these questions are dependent upon the meaning of 28 U.S.C. § 586(e) (Supp. II 1978).

Section 586(e) provides:

> (e)(1) The Attorney General, after consultation with a United States trustee that has appointed an individual under subsection (b) of this section to serve as standing trustee in cases under chapter 13 of title 11, shall fix—
>
> (A) a maximum annual compensation for such individual, not to exceed the lowest annual rate of basic pay in effect for grade GS–16 of the General Schedule prescribed under section 5332 of title 5; and
>
> (B) a percentage fee, not to exceed ten percent, based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee.
>
> (2) Such individual shall collect such percentage fee from all payments under plans in the cases under chapter 13 of title 11 for

167

which such individual serves as standing trustee. Such individual shall pay to the United States trustee, and the United States trustee shall pay to the Treasury—

(A) any amount by which the actual compensation of such individual exceeds five percent upon all payments under plans in cases under chapter 13 of title 11 for which such individual serves as standing trustee; and

(B) any amount by which the percentage for all such cases exceeds—

(i) such individual actual compensation for such cases, as adjusted under subparagraph (A) of this paragraph; plus

(ii) the actual, necessary expenses incurred by such individual as standing trustee in such cases.

Section 586(e) was added to Title 28 by the Bankruptcy Reform Act of 1978, Pub. L. No. 95–598 92 Stat. 2663. A companion section of that Act added 11 U.S.C. § 1302(e) which, with the exception noted below, contains identical provisions applicable to the compensation and reimbursement for fees and expenses of court-appointed standing trustees under chapter 13.

It is clear that the plain language of 28 U.S.C. § 586(e) does not deal expressly with the issues raised by your predecessor's questions and we have found no relevant cases interpreting that section or 11 U.S.C. § 1302(e). Nor does the legislative history of those sections, in terms, fully resolve the questions posed. In the main, the legislative history simply emphasizes what is apparent from the face of the sections: that Congress intended to establish a system for chapter 13 cases in which a set percentage fee would be collected by standing trustees from all payments made under all plans administered by them to cover their compensation and expenses; that their compensation would be limited, both in absolute terms and as a percentage of payments made under plans; and that any excess of fees collected over otherwise allowed compensation and expenses would be paid to the Treasury. See H.R. Rep. No. 595, 95th Cong., 1st Sess. 105–07, 440 (1977).[1] However, the House Report does contain one illuminating statement of intent, viz: "The fee system is designed to encourage the standing trustees to keep costs low at the risk of reduced compensation." Id. at 107.

While the limitations, both absolute and percentage, placed by § 586(e) on the compensation of standing trustees were not innovations of the Bankruptcy Reform Act,[2] the concept that this compensation and their expenses should be defrayed from a set percentage fee was. Under the applicable section of Title 11

---

[1] Section 586(e) and 11 U S C. § 1302(e) were derived from the House version of the Bankruptcy Reform Act of 1978. The Senate report is therefore unilluminating

[2] See 11 U S.C. § 1059(3) (1976) (providing, in addition to reimbursement for actual and necessary costs and expenses, for the payment of commissions to chapter XIII trustee of "not more than 5 per centum to be computed upon and payable out of the payments actually made by or for a debtor under the plan.") and H R. Doc. No. 184, 88th Cong., 1st Sess., Report of the Proceedings of the Judicial Conference of the United States, Sept 17–18, 1963 at 87 (approving the recommendation that the annual compensation of trustees in chapter XIII cases not exceed the maximum compensation of a full-time referee).

prior to the 1978 Act, the commissions paid chapter XIII trustees, including standing trustees, and their actual and necessary costs and expenses were distinct priority payment items, payable from monies paid in by or for the debtor. *See* 11 U.S.C. § 1059(2) and (3) (1976); *see also* Bankruptcy Rule 13–209. Similarly, under the Bankruptcy Reform Act, compensation and reimbursement for actual, necessary expenses for chapter 13 trustees, other than standing trustees, remain payable, as distinct items, from monies otherwise available for payment to creditors under the plan, *i.e.*, from all monies paid in by or for the debtor. *See* 11 U.S.C. §§ 330(a), 503(b)(2), 507(a)(1) and 1326(a)(1) (Supp. II 1978). In light of the statement of intent in the House Report and the difference in treatment between chapter 13 standing trustees under the Bankruptcy Reform Act and other chapter 13 trustees under that Act as well as chapter XIII trustees under the predecessor act, it would seem that Congress clearly intended that, ultimately, the amount of a standing trustee's compensation, payable as it is only from the same finite source available to defray expenses, would depend, at least in part, on his economic efficiency. That is, that it would depend on his ability to hold his expenses to a minimum.

This intended result suggests a partial answer to one of the questions which you have asked. It would be contrary to congressional intent to permit a subsequent surplus[3] to be applied to prior year's deficit in a manner that would effectively increase a standing trustee's compensation for that prior year.[4] This means that a subsequent surplus may not be applied to raise a standing trustee's net income from a prior year's percentage fees above the level of zero. In other words, a subsequent surplus may not be applied to "reinstate" any part of the compensation to which a standing trustee was entitled for the prior year under 28 U.S.C. § 586(e) but did not receive because his actual, necessary expenses incurred (and paid either from the percentage fee or out of pocket) effectively reduced his actual compensation from the percentage fee below the permissible level. A question remains, however, whether under 28 U.S.C. § 586(e) a subsequent surplus may be applied to offset out-of-pocket *losses* suffered when actual, necessary expenses in a prior year have exceeded the total dollar amount collected in percentage fees; that is, whether a subsequent surplus may be used to offset negative compensation to raise it to the break-even point.

Two arguments can be advanced why such application of a subsequent surplus may be impermissible under 28 U.S.C. § 586(e). The first is that such a setoff would be contrary, in a general way, to the principle of economic efficiency stated above. The second is that it may be in derogation of the requirement of the statute that surpluses be paid over to the Treasury.

The argument concerning economic efficiency is easily met. Whereas the legislative history of § 586(e) clearly indicates a congressional intent that the annual compensation of a standing trustee be dependent, in part, upon his ability

---

[3] By surplus we mean the excess of the percentage fee set under 28 U.S C § 528(e)(1)(B) and collected under § 528(e)(2) in a given year over the maximum permissible compensation of the standing trustee for that year and his actual, necessary expenses incurred during that year

[4] Under § 586(e)(1)(A) & (B), compensation for standing trustees must be computed on an annual basis

to keep expenses low during the year, there is no evidence that Congress either contemplated or intended that a standing trustee be required to pay actual and necessary expenses out of his own pocket, from monies not attributable to fees collected in chapter 13 cases. It simply does not follow that because Congress believed that a more efficient standing trustee should receive greater annual compensation than a less efficient one, it also intended that all standing trustees be held to a standard of efficiency which would require them to accept negative compensation (incurred by their payment of expenses defined as both "actual" and "necessary") if that result may be avoided without a clear violation of an essential element of § 586(e). In short, we find no evidence on which to base the conclusion that some abstract "spirit" of § 586(e) precludes the application of a subsequent surplus to offset prior negative compensation.

The second argument raises issues not of spirit but of text—whether such setoff would violate an essential element of § 586(e). Section 586(e)(2) requires that a surplus—that portion of the percentage fee which exceeds the total of a standing trustee's maximum annual compensation (taking into account both the absolute and percentage caps) and his actual, necessary expenses—be paid by the standing trustee to the United States Trustee for payment over to the Treasury. This provision is intended to apply in those situations in which "the standing trustee served in more cases with greater payments to creditors than anticipated at the beginning of the year when the budget was prepared and the fee fixed." House Report at 106. The intended effect is to make available to the Treasury, to partially defray the costs of the United States Trustee system, monies which, if retained by the standing trustees, would exceed their actual and necessary expenses and the compensation to which they are limited. *Id.* at 107. The provision ensures that standing trustees will not be unjustly enriched while participating in a system which is partially subsidized by the United States. Unlike its corresponding provision related to disposition of surpluses by standing trustees not under the administration of United States Trustees, it does not specifically require that excess fees be paid to the Treasury annually or on any other fixed schedule. *Compare* 11 U.S.C. § 1302(e)(2).[5]

We see nothing in the language of § 586(e)(2) or in the congressional intent behind it which requires that provision to be read as mandating that a surplus of a standing trustee in a particular calendar (or fiscal) year be turned over immediately and in full to the United States Trustee for payment to the Treasury without consideration of his prior out-of-pocket losses. We do not believe that application of a current surplus to pay for prior, unrecovered actual and necessary expenses would violate the plain language of § 586(e)(2), would cause the over-compensation of standing trustees which Congress intended to prevent, or would deprive the United States of monies which Congress intended it to have—*i.e.*, monies which would otherwise be a windfall to the standing trustees.

_____

[5] The legislative history gives no clue as to why 11 U.S.C. § 1302(e)(2) provides that excess fees collected by court-administered standing trustees be paid to the Treasury annually while § 586(e)(2) is silent on the schedule for payment

We have little to add in answer to the question whether, in a particular year, a standing trustee may establish or add to a reserve fund to cover anticipated expenses of subsequent years. We think that our conclusion that § 586(e)(2) does not require, as an absolute rule, that the full amount of a given year's surplus be turned over for payment into the Treasury in that same year, without regard to what has gone before, applies equally to what can reasonably be expected to occur in the future. So long as the establishment of a reserve fund is a reasonable business practice for a standing trustee and that fund is used to pay actual and necessary expenses (as opposed to supplementing compensation) of the trustee, we see nothing in § 586(e) to prohibit it.

LARRY L. SIMMS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
